UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-01829M-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MOTION FOR DETENTION** |
| | ) | |
| MATTHEW LEE YENSAN | ) | |
| | ) | |

Defendant Matthew Yensan has been charged via complaint with one of count of Possession with Intent to Distribute a Quantity of Marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Because Defendant poses a risk of flight and a danger to the community, and because no condition or combination of conditions will reasonably assure his appearance in court or assure the safety of the community, the United States respectfully submits this memorandum in support of its motion that Defendant be detained pending trial.

**ARGUMENT**

I. **There is a Presumption in Favor of Detention in the Bail Reform Act in this Case**

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., in a case where there is probable cause to believe that the defendant committed the offense of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, there is a presumption that a defendant should be detained pending trial. The basis of this presumption is that no condition or combination of conditions will reasonably assure the

1

appearance of the person as required and the safety of the community. 18 U.S.C. § 3141(e)(A).

The § 3142(e) presumption gives the defendant only the burden of production of proof; it does not move the burden of persuasion on the risk of flight and danger to community safety. The Government at all times retains the burden of persuasion. See United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Even when the defendant introduces evidence in support of his release, the statutory presumption in favor of detention does not vanish, but remains as a factor to be considered with the factors listed in § 3142(g).

The Section 3142(g) factors are (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g) "The Court may take into consideration the legislative finding by Congress that persons who commit drug-trafficking offenses pose a special risk of flight and a special danger to the safety of the community." United States v. Tyson, No. 7:11-CR-105-3F, 2011 U.S. Dist. LEXIS 109100, at *3-4 (E.D.N.C. Sep. 23, 2011) (internal quotations omitted). A finding that the Defendant is a risk of flight must be supported by a preponderance of the evidence, while a finding that the Defendant poses a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B).

2

In this case, the charge of Possession of Firearms in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), carries with it a presumption that the Defendant should be detained. Even without this presumption, the facts of this case indicate that no conditions of release can be fashioned to address the risk of the Defendant's nonappearance or the danger he poses to the community.

**II. The Defendant Should Be Detained Pending Trial**

    **A. The Nature and Circumstances of the Charged Conduct Demonstrate a Danger to the Community and a Risk of Flight**

    1) <u>Overview of the Defendant's Drug Trafficking Operation</u>

On July 19, 2017, Special Agent (SA) Boucher and Task Force Officer (TFO) Pearson of the Raleigh Resident Office of the Drug Enforcement Administration (DEA) were contacted by a Charlotte DEA investigator, who provided them with information about a man in Raleigh, Matthew Yensan, that was mass producing Xanax on several pill presses, and selling the pills on the Dark Net.

The Dark Net is a section of the internet that is accessed through a special browser that is required to locate hidden websites. The browser obfuscates the user's identity, and can be made to be anonymous, making it a haven for drug traffickers that want to sell their product and never have to meet any of their customers face to face.

The DEA had learned that there were likely multiple pill presses in storage unit #165 located at 404 Gorman Street, Raleigh, NC. In August, through surveillance and investigative methods, DEA investigators determined that Yensan resided at 8709 Hidden View

3

Court, Raleigh, NC. Additionally, investigators observed Yensan at this facility, Ample Storage, entering storage unit #165. After days of following Yensan, investigators determined that he did not appear to be employed.

On August 9, 2017, SA Boucher observed Yensan arrive at the storage unit in a Chevrolet Colorado, one of the vehicles registered to him, and retrieve a bag from unit #165. On August 22, 2017, two individuals were stopped on a traffic violation while leaving Yensan's neighborhood, and subsequently arrested for possession with intent to manufacture/sell/distribute heroin. They were also in possession of approximately 2 grams of high quality marijuana. Both sources stated that they had just been to 8709 Hidden View Ct, Raleigh NC, and purchased the narcotics from "Matt and Dylan". Matt Yensan is dating Dylan Cummins, and are frequently together at 8709 Hidden View Ct, Raleigh NC.  The sources additionally stated that Dylan had bragged that her boyfriend Matt was ordering several pounds of marijuana at a time using the internet.

On September 9, 2017, United States Postal Inspectors Service seized a package that was addressed to Y Vending, at 8709 Hidden View Ct, Raleigh NC, which is Yensan's residence.

On September 11, 2017, SA Boucher, TFO Pearson and Inspector Dustin Holland with the USPIS had the Wake County Sheriff's office conduct a K9 test on this package. To perform this test, the seized package was placed with 5 other control packages that did not contain any controlled substances. The K9 alerted positively on the package addressed to Y Vending. Y Vending is a company in North Carolina

4

registered to Matt Yensan. Inspector Holland obtained a search warrant, opened the parcel, and found 3 pounds of high grade marijuana.

On September 12, 2017, SA Boucher obtained and executed a search warrant for Yensan's residence. Agents attempted to deliver the package containing marijuana to Yensan, but he stated he didn't want it. Yensan then fled out the back door of the house, and had to be chased down by law enforcement. When he was stopped and detained, Yensan claimed that he was letting his dog out.

Inside the house, agents of the Raleigh Resident office located approximately 12 pounds of high grade marijuana, approximately 2 pounds of shatter, a THC based wax used for smoking, and several bottles of prescription medication not prescribed to Yensan. Additionally, Agents discovered a large amount of United States Currency stored in a locked safe. Agents discovered various hand guns and one rifle on the premises, in defensive positons. A glock .40 caliber pistol was found in Yensan's Chevy Colorado, and a Glock pistol was found in the basement next to the garage door. In this basement marijuana was found. Additionally, a Smith and Wesson revolver was found in a kitchen cabinet, a Colt revolver was found on top of a safe which contained approximately $260,000 in the master bedroom closet, and a MP5 .22 caliber firearm was found under Yensan's bed. All these weapons were loaded.

Yensan told agents that they were all legally purchased by him, and that he has a concealed carry permit. Agents discovered evidence, including crypto currency cold storage cards and bulk postage, that

5

corroborated information that Yensan was dealing on the Dark Net. Agents also discovered a fake South Carolina driver's license with Yensan's picture under the name Jacob Mason Knight at his residence.

Yensan was interviewed, and asked about the storage unit he had been seen entering. Yensan denied that he had a storage unit. Agents then showed Yensan video of himself entering the unit. Yensan continued to deny knowledge of the storage unit. Agents spoke to the manager of Ample Storage, who was shown a picture of Yensan, and recognized him. However, the manager stated that the unit was rented under the name Jacob Mason Knight, which appeared on Yensan's fake South Carolina license.

A search warrant was executed on the storage unit later that day, on September 12, 2017. During this search, agents recovered approximately 23 kilograms of counterfeit Xanax, which was estimated to be around 70,000 pills. The pills appeared to be made through the use of three commercial grade pill presses, two of which were functioning, and appeared to have been imported from China. 125 kilograms of what appeared to be the pill matrix, sucrose, was located, along with numerous items consistent with the manufacturing of Xanax, including the chemical precursor/active ingredient for the substance. Some of these items and substances, based on their packaging, seem to have been imported into the United States. Money orders were also located in this investigation that were previously sent to China.

Also located in the storage unit were boxes filled with 200-300 post office packages, filled with mylar bags full of the counterfeit

6

Xanax pills. To send these counterfeit Xanax packages, all that would have been necessary would have been to add addresses. Postage was also located in the storage unit. The State Bureau of Investigation Clandestine Lab Team and DEA seized many of the materials, and laboratory testing is pending.

DEA investigators have been tracing Yensan's anonymous activities over Dark Net markets, such as Alphabay and others. It is clear from this aspect of the investigation that he has sent counterfeit Xanax throughout the country. Investigators have started to attempt to seize some of Yensan's numerous assets. Yensan has hundreds of thousands of dollars hidden in Bitcoin, a crypto-currency that is nearly untraceable.

It is critical to note, however, that the roughly $300,000 seized represents a fraction of the proceeds flowing to the Defendant. DEA agents are attempting to access the Defendant's assets, and estimate the Defendant has another $300,000 concealed in crypto-currency. The Defendant's operation was high volume and lucrative, and agents do not know where the Defendant has hidden all of his assets.

2) <u>Defendant's Offenses Pose a Danger to the Community</u>

Defendant has been charged with Possession of Firearms in Furtherance of a Drug Trafficking Offense, which inherently is dangerous to the community. The Defendant had numerous loaded weapons stashed throughout his house in positions to take on or repel some threat, which as of this point in unknown. This demonstrates the danger of drug trafficking offenses. In this realm, danger does not


7

Case 5:17-cr-00303-D   Document 10   Filed 09/17/17   Page 7 of 14

merely mean a likelihood to cause violence, but these weapons show how drug trafficking can instigate violence.

Defendant has been charged with one drug crime via complaint, but evidence has been located giving rise to other drug trafficking offenses. The Defendant has clearly committed the offense of Possession with Intent to Distribute a Schedule IV Substance, that being Xanax. The likelihood the Defendant will continue to sell drugs should he be released presents a significant danger to the community. See <u>United States v. Ruben</u>, 974 F. 2d 580, 586 (5th Cir. 1992); <u>United States v. Fulgham</u>, Case No. CR 12-0124 CW (KAW), 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012)("The Senate Report States: 'The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.'(quoting S. REP. No. 225, 98th Cong., 1st Sess. 23, note 7 at 13).

Drug trafficking presents a danger when someone is selling drugs hand to hand locally. However, in this case, the Defendant was mixing chemicals in an effort to create a counterfeit Benzodiazepine (Xanax/Alprazolam is a Benzodiazepine), a drug that has tremendous amnestic, sedative, and hypnotic effects on the body. Heroin users often use Xanax to potentiate the effects of opiates on the body. It is hard to overstate how dangerous an activity the Defendant undertook; a math or mixing error could significantly harm or kill not just a few drug users in a neighborhood, but in every community he mailed his pills to across the country.

8

Case 5:17-cr-00303-D   Document 10   Filed 09/17/17   Page 8 of 14

3) <u>The Penalties Associated with these Crimes Create a Risk of Flight</u>

An assessment of the nature and circumstances of these offenses includes consideration of the penalties. <u>United States v. Townsend</u>, 897 F. 2d 989, 995 (9th Cir. 1990). Under the sentencing guidelines, Defendant will face severe penalties not just for the Possession with Intent to Distribute a Quantity of Marijuana, but also for the Possession with Intent to Distribute more than 70,000 dosage units of Xanax. Additionally, the Defendant faces a mandatory minimum sentence for the § 924(c) count. These sentences provide incentive for the Defendant to flee, especially when considering that the Defendant had not been caught, and avoided incarceration up to this point. <u>Townsend</u>, 807 F.2d at 995 ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.")

### B. **The Weight of the Evidence is Considerable**

The Court should consider that there is a wealth of evidence against the Defendant. The Defendant's house was full of loaded weapons, which he admitted to owning. These weapons were located in close proximity to marijuana, which he was selling. Additionally, the weapons were protecting the proceeds from his massive counterfeit Xanax criminal operation, an operation in which the Defendant sent pills across the country.

The Defendant had a fake ID located inside his house that was used to rent the storage unit where these Xanax pills were manufactured. Agents witnessed the Defendant enter this storage unit.

9

Additionally, agents have been tracking the Defendant's activities in selling drugs in dark net markets. At this point over $500,000 in cash and Bitcoin has been identified as belonging to the Defendant. This is an obscene amount of currency for someone who, in the Pretrial Services Report, claims his income comes from a vending machine and scooter business.

In his storage unit, imported machines and chemicals were seized, along with the Defendant's premade USPS packages containing the Xanax. This constitutes considerable evidence of not just the charged counts, but also other dangerous criminal activity.

C. **The History and Characteristics of the Defendant Demonstrate a Risk of Flight and a Danger to the Community**

As discussed above, the Defendant orchestrated a massive pill manufacturing operation that generated tens of thousands tablets of which investigators are aware. Agents have recovered a fraction of the money flowing to the Defendant through this operation. Because of the scope of this operation, the Defendant likely has access to significant financial resources. The estimated $500,000 seized could represent a drop in the bucket with respect to his resources. The Defendant clearly spent some of these proceeds on cars and watches. Whether he had safety deposit boxes or assets hidden somewhere else is still under investigation.

The Defendant had customers he supplied in numerous states across the country. In many cases, it appears the Defendant shipped the product to them and was paid later, either through the conversion of Bitcoins into cash or through direct cash payments. It is a reasonable

10

inference that the Defendant has people who owe him money throughout the country.

The Defendant has hundreds of thousands of dollars that are currently inaccessible to law enforcement. Unlike another era, where moving currency required physically transporting cash, this Defendant could access his Bitcoin wallets from other countries, and convert that crypto-currency to the local currency with ease. No agent could track such a transaction, and that is only referring to the Bitcoin that we currently know about, which could easily sustain him as a fugitive.

The Defendant also is comfortable living under an assumed identity. Fake identification was found in his house, and he also utilized that false identity to rent the storage facility where the pill presses were located. The Defendant has overseas contacts, as evidenced by payments to other countries, where he appears to have purchased the pill presses. The Defendant also traveled to the Bahamas in 2016.

Lastly, to release the Defendant requires the Court to place trust in this Defendant. The Defendant has already displayed that he is unworthy of this trust. While some law enforcement may claim that any defendant that does not admit to all the elements of an offense is being uncooperative, this defendant has clearly been uncooperative. He denied video of himself at the storage unit, he ran away from law enforcement when they executed the search warrant at his house, and he has been uncooperative with probation.

Defendant alleged in the Pretrial Services Report that all his assets, totaling $375,000, were seized upon his arrest. This is false, as the DEA is currently attempting to get access to the other $300,000 in Bitcoin that is encrypted. Additionally, when the Defendant was asked about any substance abuse history, he declined to discuss it.

Perhaps the clearest evidence that the Defendant is a risk for flight is the fact that when law enforcement attempted to execute the search warrant at his house, he fled.

### D. **The Defendant Poses a Threat to the Public Should He Be Released**

The threat posed by the Defendant should he be released takes several forms. First, the Defendant's current livelihood is based on selling drugs, and if released no conditions the Court may impose will prevent him from doing so. The Defendant may attempt to downplay the nature of the substances at issue in this case by remarking that they are not as dangerous as other drugs. However, Xanax/Alprazolam present serious risks to the public.

While overdose of alprazolam itself can be deadly, in the vast majority of emergency cases, users mixed alprazolam with other drugs or alcohol. When combined with central nervous system depressants, such as prescription pain killers, alprazolam results in depressed breathing and heart rate, and can lead to loss of consciousness and death. This is true of actual alprazolam, and it is unclear what the potential effects of the Defendant's imported-precursor, storage-unit, pill-press alprazolam can do to individuals. In the current climate of the opioid epidemic, amateur manufacturing of Xanax is incredibly

dangerous. If an addict was used to utilizing standard Xanax in conjunction with another opioid, and ordered and took the Defendant's counterfeit Xanax with that same opioid, deadly results could occur if the counterfeit Xanax was stronger. Due to the completely anonymous nature of the Dark Net, we have no idea if this has happened.

Further, Defendant has demonstrated a risk to the public by possessing a firearm in furtherance of his drug trafficking actions. He did not possess one weapon; he possessed five, and it does not appear that he was using them for a legitimate purpose, or to hunt. Instead, he was using them to protect his assets and his drug trafficking efforts, which would threaten the public if he was released.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Defendant be detained pending trial, on the basis that he presents a risk of flight and a danger to the community, and that there exists no condition or combination of conditions that would mitigate this risk or danger.

Respectfully submitted, this 17th day of September, 2017.

        JOHN STUART BRUCE
        United States Attorney

BY: /s/ Benjamin O. Zellinger
    BENJAMIN O. ZELLINGER
    Special Assistant United States Attorney
    310 New Bern Avenue, Suite 800
    Raleigh, NC 27601-1461
    Telephone: (919) 856-4648
    Fax: (919) 856-4487
    E-mail: Benjamin.zellinger@usdoj.gov
    NC State Bar No. 37149

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Response has, this, the 17th day of September, 2017, been served upon the below party by CM/ECF:

SUZANNE LITTLE
Attorney for Defendant
150 Fayetteville St., Suite 450
Raleigh, NC 27601
Suzanne_little@fd.org

BY: /s/ Benjamin O. Zellinger
   BENJAMIN O. ZELLINGER
   Special Assistant United States Attorney
   Criminal Division
   310 New Bern Avenue, Suite 800
   Raleigh, NC 27601-1461
   Telephone: (919) 856-4648
   Fax: (919) 856-4487
   E-mail: Benjamin.zellinger@usdoj.gov
   NC State Bar No. 37149